Chief Judge Breitel
(dissenting). The ultimate issue in this case is whether similarly situated property owners in the zoning district may be treated differently, with those reaping the economic rewards being the owners who were in violation of the law and those being denied like economic benefits being owners who have always obeyed the law.
There is no disagreement in the court that the zoning power may be exercised in a manner which necessarily deprives property owners, all or some, of potential or realized economic increments of value. There is no disagreement in the court that, in exercising the zoning power, previously illegal uses may be validated. Whatever consequences on moral, social or deterrence policies such an exercise may have is for the zoning power to decide, especially if it is faced with an irreversible accomplished fact. Hence, there is no disagreement in the court that the preconditions for allowing nonconforming uses are not logically prerequisite when the zoning power acts to validate previously uncontrolled illegality and what it considers irreversible accomplished facts.
The insuppressible and disagreeable aspect of the new zoning regulation stems from the inequality of treatment visited upon the property owners in the zoning district. It is elementary that, except in extraordinary conditions, residential properties limited to one-family use will be worth less than similar properties which may be used for two-family occupancy or higher intensive economic uses. In this case, the law-abiders suffered that diminution of value under the old zoning; the flouters did not. Now, under the less than Solomonic disposition by the city fathers, the law-abiders will continue diminished while the flouters will have the values of their properties increased further by removing the threat of law-enforcement of the old zoning regulation, however unlikely, as a discount on the "economic” value of their properties. This is the rub, and it cannot be blinked by the application of correct and refined distinctions which avoid rather than face that issue.
There is no disagreement in the court that the zoning power is a broad one indeed and should be effective to accomplish the public weal in controlling density of population and the availability of public services in the zoned area. However, that broad power is not so great, as is known from other contexts, to override the limitations on the taking, de jure or de facto, of another’s property without just compensation, or to over *390 ride the requirements for fair dealing, rationality, and equality of treatment of those affected by the exercise of the power. So, too, that broad power may not be exercised, in the classic tautology "capriciously, arbitrarily, or without rationality”. Thus, Special Term and the Appellate Division were unanimous in holding the new zoning regulation "unfair”.
Because the new zoning regulation touches on a real problem, which is no more eradicable than the injustice created by the clumsy cure embraced in the new regulation, it is appropriate to go beyond bald criticism. That the new zoning regulation is unacceptably unfair does not mean that the city could not devise or pursue fairer remedies. A time limitation could be placed on the previously illegal uses as is sometimes done with nonconforming uses. This could be coupled with or have provided independently time-limited special permit uses for the law-abiders to approach equalizing the benefits granted to the violators. Perhaps too, limited tax exemptions could be lawfully granted to the law-abiders to compensate and offset the. increased tax values that one must assume would be attributable to the illegal developments to which abject surrender is now made. There may be other devices which the ingenious could suggest to eliminate, or at least soften, the gross inequality of treatment imposed by the new zoning regulation. That the city fathers could do no better than wield a meat cleaver wreaking injustice for the zoning surgery required does not excuse them from seeking a surgical instrument more refined and delicate.
Accordingly, I dissent and vote to affirm the order of the Appellate Division.
Judges Gabrielli, Wachtler, Fuchsberg and Cooke concur with Judge Jones; Chief Judge Breitel dissents and votes to affirm in a separate opinion in which Judge Jasen concurs.
Order reversed, without costs, and case remitted to Supreme Court, Nassau County, for further proceedings in accordance with the opinion herein.